OPINION
Shawn Martin appeals from his conviction in the Greene County Common Pleas Court of Endangering Children in violation of R.C. 2929.22 pursuant to his no contest plea.
Martin was originally indicted for murder, involuntary manslaughter, and endangering children on May 12, 1999. The facts underlying these charges were set out by the prosecutor at the time of the no contest plea. The prosecution stated the following:
 And, briefly, between the dates in question and specifically on October 1st, the Defendant grabbed a child by the name of Cheyenne Martin who was two months old and weighed approximately five pounds and took that child and shook it several times and punched, slapped it in the face, several times causing cracked ribs, numerous facial injuries and a perforated stomach which eventually led to the child's death. As a result of this an investigation ensued and the Defendant is charged as it is today presented with one count of Child Endangering, a felony of the second degree.
On June 17, 1999, the trial court granted the defendant's request to hire an expert medical witness to assist in the preparation of the defense. The court limited the expenditure to $2500 for payment of the expert. The trial court continued the trial date to August 23, 1999.
On August 5, 1999, the trial court continued the trial until October 4, 1999 at the State's request. The trial was then continued several times at the request of the defendant.
A few weeks before the date of trial Martin requested that the trial court approve the payment of $4655 to Dr. Louis S. Roh, M.D. a New York forensic pathologist. In a billing sent to defense counsel, Dr. Roh sought payment of $940 for reviewing files, $2640 for one day in court, and $1,000 for pre-paid air fare from New York City to Dayton.
On July 17, 2000, the trial court granted the defendant's request for advancement of the $1,000 for the expert's air travel but denied the additional funds requested. On July 21, 2000, counsel for Martin moved to continue the trial date of July 24, 2000, so that he could travel to New York City to take the perpetuation deposition of Dr. Roh who had indicated that his testimony would be favorable to the defendant. Counsel indicated that this procedure would save money and insure that Dr. Roh would be an available defense witness.
The following is a partial account of a colloquy between counsel and the court on the day of trial in reference the need for Dr. Roh's testimony:
 MR. LEONARD: Please keep in mind, Judge, at that time, up until late last week, there was no definite decision made that the case would go to trial. His job was to do an analysis and report back an opinion.
 I might also indicate that part of the time used with respect to the fee authorized to Dr. Roh was used by Assistant Prosecuting Attorney Steve Wolaver and Defense Counsel in a mutual interview of Dr. Roh as ordered by this Court. The difference is a little more than $1100.
 When it became clear last week after Dr. Roh shared his opinion, which is favorable to the Defense, to Mr. Wolaver, which I believe occurred on Thursday of last week, the decision — of course, the Defense had hoped up to that time the Prosecutor would reconsider its charges against the Defendant. They have not. They have chosen to go forward.
 It's definite that a trial is going to be had in this particular case, and so based on the Court's ruling last week, Defense Counsel has notified Dr. Roh that unless he is able to come to town for whatever is left in the budget up to $2500, plus the airfare, which you have authorized, that we will not be able to afford his services. He said he understands that and he hopes that I understand that that's his business practice. He was provided to us through a service for attorneys.
 It's not easy to find forensic physicians to do this kind of work, so that's why I made the motion for a continuance because I thought that if we could go to New York and take the deposition, that it would be cheaper than him taking a day away from his work and coming here for purposes of testimony.
 And, again, all I want to do is make it clear for the record that I understand the Court's ruling, that it has overruled my motion for a continuance for the purpose of taking the deposition testimony of Dr. Roh and the reason was that the motion was untimely.
 We would argue, Judge, that it was simply in the sense that up until the time you overruled our motion for additional expert fees we didn't know that we were going to have to look for other options to get the testimony within the budgeted monies. Thank you.
 THE COURT: The Court made the Defense aware what the budget was and the record — I think the State has set out a time frame of what that record was, and the Defense has sort of concurred with it, where the Defense was authorized a certain amount of money, which was $2500 for expert witness fees in this case.
 Then last week, and the Defense has known that all of the time and there was not anything for consulting fees. It was the Defense's expert witness fee in this case of $2500.
 The Defense then came by way of motion for additional fees last week and requested both additional fees for the doctor, in addition to travel expenses to be prepaid. The Court put on an order authorizing up to a thousand dollars additional travel fees that had not been discussed or requested before this time.
 The Court feels it has gone out of its way to go along with the Defense. The Court doesn't feel that it should have had to pay up to the additional $1,000 in travel because the authorization was $2500 for the expert witness in the case, and now we get down to the trial and in plenty of time to discuss this between the doctor and the Defense prior to today and prior to last week, and it's the Court's feeling it's the Defense's problem and the Defense's fault if the doctor isn't here under all of the circumstances and the records that we have made in the case.
 So I guess I wonder — I don't know why, but it seems with the way the record has been made and the length of time that the amount has been aware, it makes me wonder if the Defense really wants to call the witness or not. I think the Defense should have made the Court aware of it long before this if there was a change in the amount of money authorized.
 MR. LEONARD: Judge, if I may, I take objection to your remark —
THE COURT: Okay.
 MR LEONARD: — that the Defense does not want to call the expert witness.
 THE COURT: I don't know. I don't know. I wonder because —
MR. LEONARD: Let me just make a record.
 THE COURT: Okay. Go ahead. I think it would be good to make a record.
 MR. LEONARD: I take offense at that. I want you to know that this Defendant is charged with a crime of murder. Poor people in America, in my opinion, are entitled to equal justice. Equal justice is not being served in this Court by your denial. Now, that's my opinion, for what it's worth, and I just want to make sure that the record reflects that.
 THE COURT: I guess I don't want to get the case off on the wrong thing, but I think not making the Court aware and not living within the budget that the Court set out and then coming in on the day of trial and saying I can't do this and I'm not getting justice because of that is not serving the client either, and either way of those it sounds like maybe the client isn't being served. But the question seems to be who isn't provided the proper service.
 MR. LEONARD: And, again, because of that remark I want you to know that I believe that I have provided my client with proper professional service, I think he thinks that and all I'm trying to do is to make sure that an indigent person receives equal justice in your Courtroom. That's it. That's a laudatory thing. That's what should happen.
 THE COURT: Well, I guess, you know, I guess what needs to happen here, in the Court's opinion, is that no matter whose fault it is, I don't think this case should go forward without having the opportunity of having the Defense's witness here, and I guess I don't want to do sort of — I don't know who — how we have got down to this point, if the doctor agreed to be here for this amount of money or whether he — it was an open — I don't know why the doctor is not here. The only thing I know is the doctor ought to be here and I don't know if I have any authority to issue a capias for the doctor or, you know, I guess I would like to have the doctor here and have a, you know, hearing, if necessary, afterwards on the fees or something. I don't know if that could be done.
 But right now I would [sic] willing to issue a capias for the doctor on the representation of the Defense that the doctor agreed to do this, to testify in this case and he's not here, not going to be here.
There was then a discussion on the record about whether any money would be saved by taking Dr. Roh's perpetuation deposition in light of the costs of the additional air fares and counsel fees.
 THE COURT: Well, what I'm saying is, I'm not so sure that it saves any money if we add hourly rates and things like that of everybody onto the thing, so I don't know.
 MR. LEONARD: I can assure you that whatever the rate is coming from the Public Defender for defenses of this kind of a case, I think I am probably maxed out, I think. So it would be on me.
 THE COURT: Well, except in the past you and everybody that has expended more effort than what is normal in a case has requested additional fees.
MR. LEONARD: That is true.
 THE COURT: So I'm not — I'm just not certain as to whether it's more economical to do it one way or another.
 MR. LEONARD: If it would assist the Court, I know this might result in a rather short-term delay this morning, I would be more than happy to get on the telephone to see what arrangements can be made through TASA and through Dr. Roh to — in other words, I could tell them that a capias is being issued by the Court and a hearing — the Judge would consider holding a hearing on additional fees after the trial is concluded with no guarantees. I'm only saying I'm willing to see if I can assist the Court in some fashion.
THE COURT: Does the State have any input?
 MR. HUNTER: Well, the only thing the State would say is, Your Honor, from the record over the last several months the State would agree it would be important for the Defense to have any witness available that they deem would be helpful to their case. That's their job, however, the State believes that the Court has already bent over backwards with the expert witness, Dr. Roh, and the State would remind the Court that part of the issue with respect to Dr. Roh's payment is not just the amount of payment, but the terms and conditions of the payment.
 It's the State's understanding the doctor is requiring certain things be paid up-front as opposed to the customary things of being reimbursed once those expenditures have been put forth by a witness.
 But the State believes that it is important for the Defense to have their witnesses here, any of their witnesses that they deem appropriate, but the State believes the Court has provided that, and at some point in time I think the trial should proceed. We have had several continuances at the request of the Defense.
 THE COURT: I think the up-front money that was discussed was just the travel money.
MR. LEONARD: That's correct.
MR. HUNTER: That's right.
 THE COURT: And the Court has authorized it, but, you know, not paid it, and it's my understanding that that's not what we're concerned about at this particular time.
MR. LEONARD: That's right. That's not an issue, Judge.
 THE COURT: Well, I guess — are there any other motions that need to be discussed?
MR. LEONARD: None other from the Defense.
 THE COURT: Okay. Well, I suggest that you get on the phone with the doctor and TASA, whoever you need to, and confirm that, you know, by tomorrow or the next day — when was the doctor scheduled to be here?
 MR. LEONARD: We had tentatively asked him to take his day off on Thursday. It was just our guess of how the case would go.
THE COURT: I can't imagine that it would be long.
MR. LEONARD: I can move that to Wednesday, I think.
 THE COURT: Does the State have an idea of how long the State's case will be?
 MR. HUNTER: I would estimate the State's case would go Monday and Tuesday, Your Honor, and possibly part of Wednesday, but it just depends, but I would think him being here Wednesday would be a good idea.
 THE COURT: The way that these cases usually take, I would say he would have to be here by Wednesday to be in appropriate order.
 MR. LEONARD: Let me ask you, if I asked him to be here on Wednesday and — we get this thing worked out and let's assume I ask him to be here on Wednesday afternoon, can we accommodate him if something unexpected has happened in the trial that would throw the anticipated schedule off? Can we take his testimony, get him back on the plane?
 THE COURT: We can take it sooner, out of order, yes. Is there any objection by the State?
 MR. HUNTER: The State wouldn't have any objection to that.
 THE COURT: And if you have to wait on him, then the Court would expect the Defense if you are in the Defense's case, to proceed with the Defense's case?
MR. LEONARD: Right, I understand.
 THE COURT: Okay. Let's take a short recess to see what you can find out.
MR. LEONARD: Okay. Thank you, Judge.
(WHEREUPON, Court recessed at 10:12 a.m.)
In appellant's first assignment of error, he contends he was denied equal protection of law and due process of law when the trial court failed to provide him with reasonable fees to pay his expert medical witness and in refusing to continue the trial so he could submit the medical witness' testimony by deposition.
The State argues that we should overrule this assignment because there is nothing in the record to indicate that the defendant was not able to obtain the appearance of Dr. Roh after Mr. Leonard indicated he would contact Dr. Roh and tell him that the trial court would issue a capias warrant for his appearance if he failed to appear and that the court would consider the propriety of additional fees above $2500 after the trial was concluded.
The record discloses that the court recessed at 10:12 a.m. and reconvened for the defendant's no-contest plea at 12:01 p.m. Mr. Leonard did not disclose on the record the fruits of his efforts to secure Dr. Roh's appearance for the trial. The record discloses that the State agreed to dismiss the murder and manslaughter charges in the indictment if the defendant entered a no contest plea to the endangering children charge. The State may have agreed to this reduction of the indictment because Dr. Roh was going to come to Xenia and testify on behalf of the defendant. The defendant may have thought the plea offer was too favorable to reject even though Dr. Roh was prepared to come to court and testify in his behalf.
In short, the record fails to establish that Martin was prejudiced by the trial court's failure to grant reasonable fees for Dr. Roh and to grant him a continuance to take the doctor's deposition. The first assignment of error is overruled.
In his second assignment, Martin argues that his counsel was ineffective because he failed to proffer the substance of Dr. Roh's testimony so that prejudicial error could be demonstrated when the court ruled it would pay the witness fee requested by Dr. Roh. Again because we do not know whether Mr. Leonard was unable to obtain Dr. Roh's appearance for trial, we cannot find that counsel's failure to enter a proper proffer was prejudicial to the appellant. The second assignment is likewise overruled.
It may be that Martin will be able to demonstrate in a post-conviction proceeding that Dr. Roh would not come without a commitment that the court would pay the fees he sought and that such action by the trial court denied him his constitutional right to due process and equal protection. In Ake v. Oklahoma (1985), 470 U.S. 68, the United States Supreme Court held that an indigent defendant charged with a capital offense was held to have a due process right to a state-provided psychiatrist when he makes an ex parte showing that his sanity will be a significant factor in his defense.
The cause of death of the infant in this case was at issue and Dr. Roh was apparently of the view the child's death was a natural one. Counsel may argue in his petition that the trial court's ruling was unreasonable in light of the importance of Dr. Roh's testimony.
In this direct appeal, however, the judgment of the trial court must beAffirmed.
WOLFF, P.J., and FAIN, J., concur.